## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

| | |
|---|---|
| LORENA L. FUNICELLO,　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| 　　　　Plaintiff,　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| v.　　　　　　　　　　　　　　　　　　) | Case No. _____ |
| 　　　　　　　　　　　　　　　　　　　) | |
| CACI INTERNATIONAL, INC.,　　　　　　) | **JURY TRIAL DEMANDED** |
| 1000 Research Park Blvd.　　　　　　　) | |
| Charlottesville, VA 22911　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| 　　　　Serve Registered Agent:　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| 　　　　Corporation Service Company　　) | |
| 　　　　Bank of America Center, 16th Floor　) | |
| 　　　　1111 East Main Street　　　　　) | |
| 　　　　Richmond, VA 23219,　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| 　　　　Defendant.　　　　　　　　　　) | |

## CIVIL COMPLAINT FOR EQUITABLE AND
## MONETARY RELIEF AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.　　During Plaintiff Lorena L. Funicello's employment with Defendant CACI, CACI subjected her to ongoing discrimination, harassment, and retaliation based on her race (Hispanic), national origin (Nicaraguan), sex (female), and age (54) and her protected activity (reporting the ongoing discrimination and harassment based on her race, national origin, and sex).

2.　　On December 1, 2006, Athena Innovations, Inc. hired Funicello as a Data Analyst.

3.      In September 2007, CACI International, Inc. ("CACI") purchased Athena and Funicello became a CACI employee.

4.      During Funicello's employment with CACI, some of her co-workers subjected her to unwelcome, racist, and derogatory comments about her race (Hispanic), national origin (Nicaraguan), sex (female), and age (54).

5.      These disparaging comments consumed and set the tone for Funicello's work environment.

6.      These comments occurred frequently and affected Funicello's ability to perform the requirements of her job.

7.      Funicello was intimidated by the hostility of her co-workers and often cried in response to these destructive comments.

8.      These acts were completely unwelcome by Funicello.  She repeatedly responded to this type of behavior by stating that she was tired of hearing the comments.

9.      Funicello engaged in protected conduct under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA") by objecting to and reporting the discrimination and inappropriate comments on multiple occasions.

10.     In early February 2014, Funicello learned that her employment was being terminated.

11.     CACI alleged that it was terminating Funicello's employment due to a lack of funding.

## JURISDICTION AND VENUE

12.     This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* ("Title VII") and the Age

Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA").

13.     On about June 15, 2014, Funicello filed a complaint of discrimination and

retaliation on the basis of gender, age, race, and national origin with the EEOC.

14.     Venue in this District and in this Division is appropriate pursuant to 28 U.S.C. §§

1391(b) and 1391(c), as Defendant provides business services out of its Charlottesville, Virginia

office.

## PARTIES

15.     Plaintiff Funicello is a resident of the Commonwealth of Virginia and a citizen of

the United States.

16.     Defendant CACI is a business incorporated in Delaware and headquartered in

Arlington, VA that provides information solutions and services in support of national security

missions and government transformation for intelligence, defense, and federal civilian

customers.

17.     CACI provides the foregoing services out of its business location at 1000

Research Park Boulevard, Charlottesville, Virginia 22911.

18.     CACI is an "employer" as defined by Title VII and by the ADEA.

## FACTUAL ALLEGATIONS

**Funicello Joins CACI**

19.     Funicello is a 54 year old Hispanic female who was born in Nicaragua and who

resides in Ruckersville, Virginia.

20.     On December 1, 2006, Athena Innovations, Inc. hired Funicello as a Data

Operations Analyst.

21.     At the time of her hire, Funicello's annual salary was $45,000.

22.     In September 2007, CACI, Inc. purchased Athena and Funicello became a CACI employee.

23.     At the time of this purchase, Funicello's title did not change and her annual salary was $46,177.

24.     The CACI office Funicello worked at is located in Charlottesville, VA.

25.     In or around 2008, CACI promoted Funicello to Data Analyst 2.

26.     At CACI, Funicello was part of the Facilities, Infrastructure, and Engineering Systems ("FIRES") program.

27.     As a Data Analyst 2, Funicello's duties and responsibilities included the operation and maintenance of windows based workstations, document scanning equipment and the local area network.

28.     Funicello's daily responsibilities included scanning large documents (up to 42 inches), data entry and maintenance, document analysis and repair, and team logistics for different projects.

29.     Funicello was the only Hispanic immigrant in her program office of about seventy people.

30.     A majority of Funicello's coworkers were Caucasian, non-Hispanic men.

31.     Funicello was the oldest employees in her immediate office and one of the oldest employees in the FIRES program; most of her coworkers were in their twenties and thirties.

**Funicello Receives Praise For Her Work At CACI**

32.     During her tenure at CACI, Funicello consistently received excellent performance reviews.

4

33.     Funicello's performance reviews praised her for being punctual, motivated, detail-oriented and thorough.

34.     Funicello's performance reviews indicated that Funicello sought out help when needed and offered help to coworkers when they had questions.

35.     Funicello also coached less experienced members of the team.

36.     During her employment with CACI, Funicello's pay increased consistently at about three percent every year.

37.     Monica Nicholson, a Data Analyst 1, and Deborah Whalen, a Data Analyst 2, worked in the same position as Funicello on FIRES.

38.     Nicholson is a white female of US nationality in her mid-thirties.

39.     Whalen is a white female of US nationality in her late forties.

40.     Often, Nicholson, Whalen, and Funicello would work together on projects.

41.     Funicello would complete the first step of a project, which involved fixing files.

42.     Then, Nicholson would complete the second step, which was to file the documents.

43.     Lastly, Whalen would complete the third step, which was to send out the files.

**Funicello Is Subjected To Discriminatory Remarks**

44.     Since the beginning of her employment, Funicello felt like she did not fit in with the company's culture.

45.     During the first month of Funicello's employment, the only training that she received was a three minute demonstration on how to use a scanner.

46.     Funicello asked her team leader, Darin Hutchison, if she would receive other training and he replied, "If you cannot play an instrument, you cannot be in the band!"

47.     Hutchison is a white male of US nationality in his early thirties.

48.     Hutchison resigned from CACI in or around the end of 2013.

49.     When Funicello was hired, she was 47 years old.

50.     Hutchison, Funicello's team leader, spread a rumor that Funicello was 58 years old.

51.     Hutchison would ask Funicello, "When are you going to bake us cookies?"

52.     Funicello would respond, "I do not bake".

53.     On at least one occasion, Hutchison replied, "Isn't that when you are in your mid-fifties you start baking cookies for your grandchildren?"

54.     In January 2007, several employees discussed a work trip to Alaska.

55.     Funicello expressed her desire to attend the trip to Alaska to James Reinhold, the Assistant Team Lead.

56.     Reinhold replied, "Yeah, you can come with us and make us tacos and wash the dishes."

57.     Reinhold is a white male of US nationality in his early thirties.

58.     Reinhold resigned from CACI in or around 2010.

59.     Usually, when a new employee was hired, the employee was walked through all of the offices and introduced to the current employees.

60.     Funicello was not introduced to the current employees when she began working for Athena.

61.     As a result, many coworkers did not know who Funicello was.

62.     Some of the employees would look at Funicello and whisper.

63.     In January 2007, Funicello mentioned the fact that she had not been introduced to her coworkers to Reinhold.

64.     Reinhold replied, "They probably think you are the maid."

65.     In March 2007, Funicello was having a friendly conversation with some coworkers.  Hutchison was present.

66.     Hutchison told those present, "I do not care what anyone says.  You are judged by the way you look and where you come from."

67.     Funicello responded, "Or if they have an accent?"

68.     Hutchison said "yes."

69.     The next day, Hutchison came in and told everyone that what he did not actually believe that people are judged by the way they look or where they come from.

70.     On April 16, 2007, Funicello was sitting and working about two desks over from Reinhold.

71.     Two individuals were sitting between Funicello and Reinhold, one of whom was Brendan Kilfoil.

72.     Kilfoil is a white male of US nationality in his early thirties.

73.     CACI continues to employ Kilfoil.

74.     Reinhold loudly asked Funicello, "Is your back still wet?"

75.     Thinking that she misheard him, Funicello responded "Excuse me?"

76.     Reinhold then said, "Is your back still wet from crossing the Rio Grande?"

77.     After Reinhold's second comment, Funicello turned to Kilfoil, quoted Reinhold, and asked Kilfoil "Did you hear that?"

78.     Kilfoil responded, "I heard nothing" and then put his headphones on.

79.     In May 2007, Funicello hired a coworker, Meredith, to teach her Arabic.

80.     Meredith came to Funicello's house for their first class.

81.     Meredith is a white female of US nationality in her mid- to late-twenties.

82.     The next day, Kilfoil, in front of Funicello, asked Meredith if Funicello "lived in a dirty house with a sofa full of holes and dog shit inside the house."

83.     Meredith and Funicello both found his comment offensive and Meredith told Funicello "He is a jerk, I don't know how you can put up with this."

84.     In May 2007, a CACI employee who was not in Funicello's program left his BMW car parked near their building.

85.     One morning, they came to work and the tires on this BMW were missing.

86.     Robert Tull, an African American coworker, said that "the thieves are the Hispanics that work here."

87.     Tull was referring to a group of Hispanic workers that did landscaping work at the building.

88.     In or around 2007, Funicello was talking to Kilfoil and a male co-worker in his mid-fifties, in the area around their desks about different software programs.  This co-worker mentioned the high quality of Windows 97 and how much he liked that program.

89.     When the co-worker left, Kilfoil said "Fucking old man.  Windows 97 is ten years old.  He is not up on technology."

90.     In October 2007, Funicello was having difficulty working with some files. Funicello asked Kilfoil for help, which he provided.

91.     After Kilfoil helped Funicello, he asked her why she "didn't go back to cutting hair?"

92.     Funicello used to be a Cosmetologist before she worked for Athena/CACI.

93.     In the end of 2007, Kilfoil became Funicello's Team Leader.

94.     Kilfoil often made racial remarks to Funicello while he worked as her Team Leader.

95.     For example, Kilfoil once said, "The white woman that cleans the office has a black boyfriend.  I heard her arguing over the phone, and he is probably her pimp asking her for her money."

96.     In January 2008, Funicello had her first evaluation with the program manager at the time, Chris Blahm.

97.     Blahm is a white male of US nationality in his late thirties who resigned from CACI in 2008.

98.     Blahm said to Funicello, "This is the first time I hired someone without seeing them first."

99.     In early 2008, Kilfoil made a gesture with his lips, attempting to make them big and asked, while pointing to a co-worker's desk, "Where is…"

100.     The co-worker's desk Kilfoil pointed to was Robert Broadwater, an African American male of US nationality in his late twenties.

101.     Later in 2008, Kilfoil continued to make racist comments and even told Funicello, "You should clean my desk before I come to work in the morning."

102.     Some of Funicello's coworkers often commented on her accent and the way she spoke.

103.     As a result, Funicello tried very hard not to ask questions during group situations or in public so that she would not be humiliated if her coworkers made fun of her accent.

9

**Funicello's First Complainant Of Discrimination**

104.    In September 2008, Funicello had an employee evaluation with Benjamin Harris, a manager, and Kilfoil.

105.    Harris is a white male of US nationality in his late thirties.

106.    During the meeting, Funicello told Harris that she had been subjected to inappropriate racial comments.

107.    Funicello provided examples, including Reinhold's question as to whether her back was wet from crossing the Rio Grande.

108.    Harris seemed upset by the comments, but Kilfoil cut in and said, "That shit happened a long time ago!"

109.    Funicello replied, "To me it does not matter, the thing is, that it happened! And, [Kilfoil], you were there."

110.    Kilfoil changed the subject, and the evaluation ended soon thereafter.

111.    In early March 2009, Kilfoil commented that Funicello never gets sick and said "I think it is where you came from; you have all the germs, bacteria, and viruses living in you."

**CACI Lays Off Funicello**

112.    In October 2009, CACI laid off Funicello and classified her as "part time on call," citing a lack of funding.

113.    Approximately ten to fourteen other employees were also laid off at that time.

114.    Funicello worked part time for two months before being hired back as a full time employee in January 2010.

115.    When Funicello returned to work full time in January 2010, Brendan Kilfoil was still her team leader.

116.   In 2011, CACI hired about fifteen to twenty temporary employees to assist on the FIRES program.

117.   Of these temporary employees, one was an Asian female, two were African American females, and the remaining employees were Caucasian.

118.   When the projects for these temporary employees were complete, CACI kept on about five of these employees as permanent, full-time hires.

119.   All of the employees who were kept on a permanent hires were Caucasian.

120.   Funicello trained one of these permanent hires, Erin Mitchell, who is still employed at CACI.

**Funicello Continues Receiving Discriminatory Remarks**

121.   In January 2011, CACI hired a new Assistant Team Lead, Kevin Irish.

122.   Irish is a white male of US nationality in his late thirties.

123.   Funicello was assigned to train Irish.

124.   At the time, Funicello shared an office with Irish and two other employees.

125.   In or around February 2011, Eric Dean became Funicello's team leader.

126.   Eric Dean often made fun of Funicello's accent.

127.   Dean is a white male of US nationality in his early thirties.

128.   CACI continues to employ Dean on the FIRES program.

129.   Every time Funicello said certain words, Dean would say, "Say it again!"

130.   For example, Funicello referred to her computer as "machine."

131.   Dean thought Funicello's pronunciation of "machine" was funny.

132.   Dean often asked Funicello to repeat the word "machine."

133.    In an attempt to stop Dean from making fun of how she pronounced words, Funicello would use synonyms for any word he asked her to repeat.

**Kevin Irish Sexually Harasses Funicello**

134.    While training, Irish frequently stared at Funicello inappropriately and made sexual comments.

135.    For example, one day during training, Funicello was wearing a sweater.

136.    While staring at Funicello's breasts, Irish said "Uh isn't that a nice sweater?"

137.    On another occasion, Irish said "Latinas are hot."

138.    Irish also commented about Funicello's black hair and said that "women with black hair are very sexy."

139.    One day when Funicello opened a can of soda, Irish commented, "Did you fart?"

140.    On another occasion, Irish told Funicello about his trip to Costa Rica.

141.    Irish mentioned that he hired a prostitute while he was there.

142.    Funicello told Irish that she was not interested in hearing about his personal life.

143.    During a training session, Funicello gave Irish an instruction and he responded, "What did you say?  You are a whore?"

144.    Because Irish's comments directly related to sex, Funicello felt physically threatened.

145.    Funicello went to Brent Graham, Irish's Project Manager, and requested to be moved to a different office.

146.    Graham is a white male of US nationality in his early forties.

147.    Graham said that Funicello could work for him and change offices, but he wanted to know why she was requesting a move.

12

148.    Funicello did not want to tell Graham about the harassment.

149.    Graham told Funicello to speak with Dean, her Team Leader.  Funicello told Dean she wanted to be moved and Dean asked why.  Funicello then told Dean about Irish's conduct.

150.    Dean told Graham and Graham called HR.  A woman from HR called and interviewed Funicello.  Funicello repeated for the HR woman what Funicello told Dean.

151.    The next or the following day, Dean, Graham, John Wiggins (the Program Manager) and Irish had a meeting.

152.    Wiggins is a white male of US nationality in his mid-forties.

153.    Graham informed Funicello that Wiggins told Irish that if he harassed Funicello again, he would be fired.

154.    After this meeting, Crystal, a Data Analyst 1, came forward and reported that Irish harassed her as well.

155.    Crystal is a white female of US nationality in her late twenties.

156.    Irish made inappropriate comments to Crystal and looked at her in a sexual way. Crystal told Funicello that Irish also harassed someone else, but she did not tell Funicello who.

157.    CACI fired Irish shortly thereafter.

**Funicello Applies For The Assistant Team Lead Position**

158.    In April 2011, Funicello emailed Chad Kim, the Senior Project Manager, about the open Assistant Team Lead position.

159.    Kim is an Asian male of US nationality in his late thirties.

160.    In the email, Funicello noted that she had been fulfilling this position for the past four months.

161.    Funicello also said that she had trained the previous Assistant Team Lead and helped the Team Lead transition to his new job while training four other team members.

162.    Kim told Funicello that he thought she would be a great fit for the position, but that he was not sure they had the budget to continue funding the position.  This position was never filled.

**CACI Lays Off Funicello For The Second Time**

163.    In June 2011, CACI laid off Funicello and approximately thirty or forty other people.

164.    CACI again cited lack of funding for the June 2011 layoff.

165.    After Funicello's October 2009 and June 2011 layoffs, she noticed that CACI did not hire back all of the employees it laid off each time.

166.    Instead, CACI rehired some employees it had laid off and hired new employees to replace those employees that they did not hire back.

167.    After both layoffs, Funicello noticed that employees who were not hired back tended to be those who the management did not favor.

168.    After the round of lay-offs in June 2011, Funicello was hired back, but Bill McChesney was not.

169.    McChesney is a white male of US nationality in his late -fifties.

170.    In the spring of 2010, McChesney was assigned to move six large scanners in the office.

171.    McChesney had asked Ben Devlin, his Project Manager, for help from some members of Devlin's group, but McChesney was told that no one could help him.

172.    Devlin is a white male of US nationality in his late thirties.

14

173.    McChesney, who was not strong enough to move these scanners on his own, called Chris Kintner, a CACI Business Manager who worked in the Vice President's office, and asked for help.

174.    Kintner is a white male of US nationality in his late thirties.

175.    Kintner called Devlin and told him to provide McChesney with the support he needs.

176.    Kilfoil told Funicello that Devlin was unhappy about McChesney's request for assistance to Kintner.

177.    Kilfoil said that "McChesney fucked himself up" and "he pissed Devlin off."

178.    McChesney was let go in June 2011 as a result of this incident.

179.    When Funicello returned to work in January 2012, Brendan Kilfoil sent her an e-mail with a quick question.

180.    Kilfoil later came to Funicello's office for an unrelated matter.  While at her office, Funicello asked Kilfoil if McChesney would be hired back.

181.    Kilfoil said that it was up to Dean who he wanted to call back.

**Funicello's Return To CACI and Continued Discrimination**

182.    When CACI hired Funicello again, it assigned her to a new team leader, Jessica Edwards.

183.    Edwards is a white female of US nationality in her early thirties.

184.    Funicello's old team leader, Eric Dean, still repeatedly came to her office and said "machine" using an accent and imitating her.

185.    Dean did this imitation in front of other coworkers.

186.    Funicello ignored Dean in an attempt to get him to stop imitating her.

15

187.    When Funicello returned to work, her office was next to Deborah Whalen, a data analyst.

188.    Whalen began working in CACI's Charlottesville, Virginia office in or around late 2010.

189.    CACI also laid off Whalen in June 2011, but she was hired back a few months before Funicello.

190.    Whalen resigned from CACI in March 2014.

191.    Funicello did not speak to Whalen before they were seated next to each other.

192.    After Funicello and Whalen were seated next to each other, they would occasionally make small talk.

193.    In March 2012, Funicello started working 10 hour days, as did Whalen.

194.    Whalen had a key to the office.

195.    Both Whalen and Funicello would arrive at the office at 5:00 am.

196.    During this time, they would be alone for two to three hours in the morning and would usually talk during this time.  Most of their conversations were small talk about their dogs or homes.

197.    However, Whalen started imitating Funicello's accent on occasion.

198.    As time went on, Whalen's imitations became routine and harsh.

199.    Whalen frequently made comments to Funicello such as "What the fuck are you saying?" and "Say that shit again, you sound so fucking funny."

200.    In or about spring 2012, Funicello got so annoyed with Whalen's comments that Funicello asked Whalen what was so funny about Funicello's accent and told Whalen that Whalen had an accent too.

201.    Whalen has a southern accent.

202.    Whalen responded by giving Funicello the middle finger.

203.    Funicello's statement temporarily stopped Whalen's comments, but Whalen started making comments again after a few weeks.

204.    In September 2012, Funicello was telling Whalen about how difficult it was when Funicello first met her in-laws because she did not speak much English at the time.

205.    Whalen said, "What did they think – that you were the maid?"

**CACI Revokes Funicello's Bonus**

206.    In December 2012, Funicello found a copy of an undated Excel sheet that said she was supposed to get a 10% pay raise on December 1, 2010.  Funicello did not know about this pay raise and never received it.  Funicello does not know who wrote this note in the Excel sheet.

207.    In January 2013, Funicello had an evaluation meeting with Brent Graham, her former manager, and Jessica Edwards, her team leader.

208.    Graham informed Funicello that she would receive a bonus of $1,000.

209.    Graham filled out a form for this bonus during the meeting, and personally took it to Ross Flores.

210.    In or about May 2013, Flores called Funicello and Graham to his office and told Funicello that she would not receive the bonus.

211.    Funicello cannot recall the reason Flores gave for denying her the bonus, but she remembers that it did not make sense.

212.    Flores is a male of either Caucasian or Hispanic descent, of US nationality in his late forties.

**CACI Management Parties With and Favors Younger Employees**

213.    On June 6, 2013, Benjamin Harris told Funicello that CACI is "laying him off because he was not a drinking buddy with Ross [Flores] and Chad [Kim]."

214.    On June 18, 2013, Charles Hickox, a white male in his mid-sixties, was laid off.

215.    Hickox told Funicello that "Ross [Flores] did not like him."

216.    Hickox also made this comment to Paul Lueders.

217.    Lueders told Funicello that he "hopes it is not true."

218.    Lueders is a white male of US nationality in his early forties.

219.    On July 20, 2013, Funicello volunteered to paint CACI's office, along with other coworkers.

220.     When she arrived at her office, Funicello found empty beer bottles in her trash can.

221.    John Brase told Funicello that Ross Flores, Chad Kim, Jessica Edwards and Melina Vaughan were drinking in the office the night before.

222.    Funicello saw alcohol in the kitchen fridge at her office and Brase said that Flores kept alcohol in his office.

223.    Brase is a white male of US nationality in his mid-twenties.

**Funicello's Second Complainant Of Discrimination**

224.    In late July 2013, there was a large amount of work to do with a tight deadline.

225.    In order to get all of the work done, Funicello helped Whalen and a few other employees with AutoCAD so that they could assist with extra work.

226.    During these sessions, Whalen frequently made offensive comments.

227.    Sometimes, Whalen did not do her share of work, which was frustrating because Funicello put in extra effort for this project.

228.    Whalen sometimes just talked with other employees for a while, not doing anything productive.

229.    One day after Whalen made one of her usual jokes about Funicello's accent, Whalen then said, "When the fuck will you learn English, lady?"

230.    In August 2013, Funicello went to Katie Broadhurst to tell her about how difficult Funicello's work load was, particularly when other employees did not do their share of the work.

231.    Broadhurst is a white female of US nationality in her late twenties.

232.    Funicello also mentioned that her work environment was extra difficult because of the inappropriate jokes and comments she had been subject to, including those from Whalen and Kilfoil.

233.    Funicello told Broadhurst that she was tired of hearing the jokes.

234.    Broadhurst was not surprised when Funicello said that Kilfoil made racist comments and said, "Yeah, he is that type of person."

235.    Broadhurst also mentioned that she knew Kilfoil was very mean to Paul Duprey, a Data Analyst/Current Operations, and made inappropriate comments to him about his age.

236.    Duprey, who is in his mid-60s, was laid off in June 2013.

237.    Later that day, Funicello heard Broadhurst and her Team Lead, Jessica Edwards, whispering for about 20 minutes.

238.    When they were done, Edwards told Whalen that her office location would be changed to a building across the street.

239.    Funicello does not believe that Whalen was disciplined in any way for her jokes and comments about Funicello's accent.

240.    Despite Whalen's office move, she continued to harass Funicello in person when she came over to Funicello's office.

241.    Whalen still worked on Funicello's team, so she frequently came over to the area around Funicello's office.

242.    On these occasions, Whalen would stop by to speak with Funicello.

243.    Whalen again harshly imitated Funicello's accent and made comments like, "What the fuck are you saying?"

244.    Funicello started to put headphones on when she knew Whalen was coming over so that Whalen would not talk to her.

**Management Continues To Drink And Party With Younger Employees**

245.    In August 2013, Edwards told Funicello and her coworkers to update their resumes in CACI's resume database and to enter August 1, 2013 as the date of their last evaluation, even though Funicello's last evaluation was in January 2013.

246.    Funicello spoke about this with Monica Nicholson, Jordan Bosch and John Brase, and they all agreed that CACI was "cheating them" because CACI uses their evaluations for pay raises every year.

247.    During this conversation, someone mentioned asking Edwards about this decision and Edwards responded that "it came from Flores."

248.    Through Funicello's time at CACI, management staff, including Ross Flores and Chad Kim, went out drinking and partying with mostly younger employees.

249.    These younger employees included Melina Vaughan (a white female of US nationality in her late twenties), Jessica Edwards (a white female of US nationality in her early thirties) and Robert Hott (a white male of US nationality in his mid-twenties).

250.    These coworkers would have cookouts and parties together.

251.    Flores favored the employees who attended these parties.

252.    These employees consistently came in late and regularly took two to three hour lunches.

253.     The management had pictures of Vaughan and Edwards hanging on the office walls in the area where Flores and Kim worked.

254.    The pictures of Vaughan were taken in downtown Charlottesville by Kim.

255.    Both Kim and Vaughan took time off work specifically so that Kim could photograph Vaughan.

256.    The day that Kim took the photos, Vaughan arrived at the office more dressed up than normal.

257.    Monica Nicholson asked Vaughan what was going on, and Vaughan replied, "Chad [Kim] wants me to wear something nice so he can take pictures of me."

258.    No one else from Funicello's group was asked to be photographed.

259.    Vaughan and Edwards are white-skinned, blond-haired, tall and slender females.

260.    Deborah Whalen, Monica Nicholson, Erin Mitchell, and John Brase referred to them as "The Barbie Club" and said that "if we don't belong to the Barbie Club we are out of luck to keep our jobs."

261.    In September 2013, Flores had a party at his house to celebrate winning the re-compete of the FIRES contract.

262.    This was the first time Flores invited Funicello to a non-CACI sponsored event to socialize with the employees who drank.

263.    Funicello went to the party to support team morale.

264.    When Funicello walked in, many employees appeared to be intoxicated.

265.    The majority of attendees were men and most of the women were in their twenties.

266.    Funicello did not feel comfortable and left within ten minutes.

**Funicello's Third Complainant Of Discrimination**

267.    On December 24, 2013, Funicello met with Flores, her Program Manager, in his office.

268.    Flores asked if Funicello was present at the meeting where her government customer mentioned that it was trying to get more funding.

269.    Later in the conversation, Flores said, "I noticed you have not applied for any jobs within the program."

270.    Funicello told Flores that she did not bother applying because she knew that she would not be selected.

271.    Funicello told him, "I think I have always been discriminated against.  People make fun of my accent, so I don't want to go through anything else."

272.    Flores asked if the discrimination was happening now.

273.    Funicello started to respond affirmatively, but Flores cut her off and said that CACI and the government would be making some tough choices soon.

274.    Flores also said that he "wanted [her] to think about it during the Holidays," but Flores never told Funicello what he wanted her to think about.

275.    The meeting ended shortly thereafter.

276.    Later that day, Funicello asked Edwards what Flores meant when he told Funicello to "think about it during the Holidays".

277.   Funicello asked Edwards, "Do you know what Flores wants me to think about?"

278.   Edwards told Funicello that she did not know what Flores was talking about either.

**Funicello Is Terminated**

279.   On December 31, 2013, when Funicello returned to work from the holiday vacation, she emailed Flores and requested to speak with him in his office.

280.   Flores agreed.

281.   Funicello went to Flores's office and told him that she wanted to keep her job.

282.   Funicello said that she was willing to train, to move offices or to do what was needed to stay.

283.   Flores just replied, "You have to understand the government will have to make tough choices."

284.   On February 4, 2014, Flores notified Funicello that she was being terminated due to a lack of funding and that her last day of work would be February 26, 2014.

285.   Flores told Funicello that he was going to lay off "a lot of folks", but at that time, CACI only terminated Funicello and one other employee, Jordan Bosch.

286.   Bosch is a white male of US nationality in his mid-twenties.

287.   Bosch had previously complained to management about not being selected for a promotion.

288.   Bosch's performance as a data analyst was excellent.

289.   However, Bosch had complained to CACI when he was passed over for a promotion.

290.    In October 2013, Ross Flores sent an email saying that two individuals would be selected to go to the National Ground Intelligence Center ("NGIC"), through an intensive training program to become Intelligent Analysts.

291.    Eight employees interviewed for two positions.

292.    Bosch was the most qualified for this position, having previous military experience and a year of specialized training in this area.

293.    The positions were given to Robert Hott and Melina Vaughn.

294.    Neither had previous experience in this area.

295.    During training, Vaughn even asked "What is camouflage?"

296.    Vaughn also made comments that she could not keep up with the training, such as "I am drowning."

297.    Vaughn asked others for help with her training, including Bosch.

298.    The supervisors for these positions were Ross Flores and Chad Kim, who are the managers who drank and socialized with Hott and Vaughn.

299.    When Funicello and her coworkers found out who was selected, Bosch emailed the people who interviewed him for the position asking why he was not chosen.

300.    They replied "they chose the two employees that fit their team the best."

301.    After Bosch sent that email, Flores called him to his office and told him to stop complaining or he would be let go.

302.    Although CACI told Bosch and Funicello that their terminations were due to lack of funding, their salaries make up a very small portion of the budget for the contract they are under.

303.     When CACI terminated Funicello, she was in the process of watermarking 300,000 total documents and about 200,000 files were left to do.  It would have taken Funicello five to six months to complete this project.

304.     On February 18, 2014, two coworkers organized a lunch for Funicello and Bosch.

305.     During the lunch, Funicello asked Whalen if Whalen would pass her a plate.

306.     Whalen picked up a plate and said, "We call these bowls."

307.     Funicello responded, "Can I have a bowl please."

**Funicello's Fourth Complainant Of Discrimination**

308.     On February 25, 2014, Funicello emailed Edwards and asked Edwards to meet with her.

309.     Funicello and Edwards met outside of the building to talk.

310.     Funicello told Edwards about all of the discriminatory comments to which she has been subjected.

311.     Edwards responded, "That is not cool, how can someone say that to you?"

312.     Later that same day, Monica Nicholson and Funicello were exiting Funicello's office and Whalen was walking in front of them.

313.     Whalen told Funicello that someone called the CACI hotline to complain about "some shit."

314.     Whalen added that she was one of about four employees randomly selected to be interviewed by CACI HR.

315.     Whalen then said to Funicello, "Do you want me to tell you something really racist?"

316.     Funicello replied, "Go ahead."

317.    Whalen said, "I will tell you tomorrow."

318.    Whalen did not say anything to Funicello the next day, which was Funicello's last day at CACI.

319.    Funicello believes that Whalen thinks Funicello called the CACI hotline and reported the racist comments Whalen made to her.

320.    The CACI hotline is a phone number that employees can call to report anything, either by name or anonymously.

321.    When employees join CACI, information on the hotline is in the welcome package.

322.    There are also posters in the office and kitchen with information on the CACI hotline.

323.    The CACI hotline is also mentioned during yearly training.

**Funicello's Fifth Complainant Of Discrimination**

324.    That same day, Funicello emailed CACI Vice President Ruey Newsom at 11:46 am and asked to meet with him.

325.    Newsom is a white male of US nationality in his late forties.

326.    Newsom responded at 2:23 pm and invited Funicello to stop by his office.

327.    Funicello had to leave that day for a doctor's appointment at 2:30 pm, so she did not get to stop by his office.

328.    Funicello responded to Newsom's email and asked him to name a convenient time for her to stop by the next day, which would be her last day.  Newsom did not respond.

329.    On February 26, 2014, Funicello saw Newsom in the hallway while she was out-processing and told Newsom that she wanted to speak with him.

330.    Newsom and Funicello spoke in Newsom's office for about 45 minutes that day.

331.    Funicello told Newsom about all the discriminatory comments she had been subjected to over the years.

332.    Newsom asked why Funicello had never called the CACI hotline.  Funicello responded that she was concerned about retaliation and that she might lose her job if she complained.

333.    Newsom kept saying, "I am so sorry that you went through that, but I cannot do anything about it."

334.    Funicello listed specific incidents of harassment, discrimination, and retaliation to which she had been subjected at CACI.

335.    Funicello told Newsom that she did not want anyone else to go through what she went through.  Newsom told Funicello that it would not happen again.

**CACI Continues To Employ Current Employees And Hire New Employees**

336.    CACI continued to employ Nicholson and Whalen after Funicello's termination, who were Data Analysts 1 and 2, respectively.

337.    CACI continues to employ Erin Mitchel, a Data Analyst 1 that Funicello trained in February 2011.

338.    Mitchell is a white female who is about 50 years old.

339.    After terminating Funicello's employment, CACI hired three new employees as part of her program, FIRES.

340.    Shortly after Bosch and Funicello were terminated, Nicholson met with Flores to discuss upcoming changes regarding a transition in the FIRES program.

341.    Nicholson, who is in her mid-thirties, told Flores that she was more than willing to do the work, but did not want to be involved in the partying.

342.    Nicholson was terminated twelve days later.

**CACI HR Calls Funicello**

343.    On March 25, 2014, Funicello received a call from CACI Human Resources.

344.    A woman left a voicemail saying that she was calling about Funicello's conversation with Newsom and that she wanted to chat with Funicello.

345.    Funicello did not return her call and the woman did not contact Funicello again.

**Funicello files and administratively exhausts her EEOC Complaint**

346.    Funicello filed her formal EEOC Complaint against CACI on June 15, 2014.

347.    On September 19, 2014, the EEOC closed Funicello's case and issued her a Notice of Right to Sue.

<u>**COUNT I**</u>
**Race and National Origin Discrimination**
**In Violation of Title VII as to Defendant CACI**
**42 U.S.C. § 2000e-2**

348.    Funicello hereby incorporates all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

349.    At all times relevant to this complaint, Funicello was an "employee" as defined by 42 U.S.C. § 2000e.

350.    At all times relevant to this complaint, CACI was an "employer" as defined by 42 U.S.C. § 2000e.

351.    Funicello is a Hispanic female from Nicaragua.

352.    CACI was aware of Funicello's race and national origin throughout her employment with CACI.

353.    CACI unlawfully subjected Funicello to a hostile work environment and disparate treatment based on her race and her national origin throughout her employment with CACI.

354.    CACI took an adverse action against Funicello in August 2013 when it failed to investigate the ongoing harassment that Funicello reported to Katie Broadhurst.

355.    CACI took adverse action against Funicello in December 2013 when it failed to investigate the ongoing harassment that Funicello reported to Ross Flores.

356.    CACI took an adverse action against Funicello when it terminated her on February 4, 2014.

357.    CACI had no legitimate business reasons for the adverse actions it took against Funicello.

358.    These adverse actions occurred under circumstances that raise a reasonable inference of unlawful discrimination based on Funicello's race and national origin, as CACI treated Funicello less favorably than her Caucasian colleagues.

359.    CACI's stated reasons for its adverse actions against Funicello are pretext for race and/or national origin discrimination.

360.    Funicello was the only Hispanic immigrant in her immediate office of about seventy people.

361.    When CACI terminated her, Funicello was in the process of watermarking 300,000 total documents and about 200,000 files were left to do.

362.    It would have taken Funicello five to six months to complete this project.

363.    CACI continued to employ Monica Nicholson, Deborah Whalen and Erin Mitchell after Funicello's termination.

364.    Nicholson, Whalen and Mitchell are all Caucasian and hold a position comparable to Funicello's position.

365.    Funicello trained Mitchell when she was hired as a temporary employee in 2011.

366.    After terminating Funicello's employment, CACI hired three new employees as part of Funicello's program, FIRES.

367.    CACI has not taken personnel actions against Funicello's colleagues for the unwelcome, racist, and derogatory comments made to Funicello.

368.    Funicello has sustained damages as the result of CACI's illegal discrimination in violation of Title VII, including, but not limited to, lost wages, lost bonuses, damage to her career, and emotional, mental, and physical distress and anxiety.

369.    Funicello is entitled to such legal or equitable relief as will effectuate the purposes of Title VII, including but not limited to economic and compensatory damages, and reasonable costs and attorneys' fees.

## COUNT II
### Disparate Treatment and Hostile Work Environment
### Based on Sex and Age
### In Violation of Title VII and the ADEA as to Defendant CACI
### 42 U.S.C. § 2000e-2 and 29 U.S.C. § 623

370.    Funicello hereby incorporates all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

371.    At all times relevant to this complaint, Funicello was an "employee" as defined by 42 U.S.C. § 2000e and 29 U.S.C. § 630(f).

372.    At all times relevant to this complaint, CACI was an "employer" as defined by 42 U.S.C. § 2000e and 29 U.S.C. § 630(b).

373.    Funicello is a 54 year old female.

374.    CACI was aware of Funicello's gender and age throughout Funicello's employment with CACI.

375.    CACI, through its employees, unlawfully subjected Funicello to harassment due to her sex and age throughout her employment with CACI.

376.    CACI took an adverse action against Funicello in May 2013 when management denied Funicello a bonus that her manager and team leader promised her.

377.    CACI took an adverse action against Funicello when it terminated her on February 4, 2014.

378.    CACI had no legitimate business reasons for the adverse actions it took against Funicello.

379.    CACI's stated reasons for its adverse actions against Funicello are pretext for gender and/or age discrimination.

380.    These adverse actions occurred under circumstances that raise a reasonable inference of unlawful discrimination based on Funicello's gender and age, as CACI treated Funicello less favorably than her younger and male coworkers.

381.    Funicello was one of the oldest employees in her office of about seventy people.

382.    When CACI terminated her, Funicello was in the process of watermarking 300,000 total documents and about 200,000 files were left to do.

383.    It would have taken Funicello five to six months to complete this project.

384.    After terminating Funicello's employment, CACI hired three new employees as part of Funicello's program, FIRES.

385.    CACI has not taken personnel actions against Funicello's colleagues for the unwelcome, ageist, sexist, and derogatory comments made to Funicello.

386.     Funicello sustained damages as the result of CACI's illegal discrimination in violation of Title VII and the ADEA, including, but not limited to, lost wages, lost opportunity to increase her wages, lost bonuses, lost opportunity to increase her bonuses, damage to her career, and emotional, mental, and physical distress and anxiety.

387.     Funicello is entitled to such legal or equitable relief as will effectuate the purposes of Title VII and the ADEA, including but not limited to economic and compensatory damages, and reasonable costs and attorneys' fees.

**<u>COUNT III</u>**
**Retaliation In Violation of Title VII and the ADEA as to Defendant CACI**
**42 U.S.C. § 2000e-3 and 29 U.S.C. § 623**

388.     Funicello hereby incorporates all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

389.     At all times relevant to this complaint, Funicello was an "employee" as defined by 42 U.S.C. § 2000e and 29 U.S.C. § 630(f).

390.     At all times relevant to this complaint, CACI was an "employer" as defined by 42 U.S.C. § 2000e and 29 U.S.C. § 630(b).

391.     Funicello is a 54 year old Hispanic female from Nicaragua.

392.     CACI was aware of Funicello's race, national origin, gender and age throughout her employment with CACI.

393.     Funicello engaged in protected activity under 42 U.S.C. § 2000e and 29 U.S.C. § 623 when she opposed the harassment by her co-workers.

394.     Funicello engaged in protected activity under 42 U.S.C. § 2000e and 29 U.S.C. § 623 when she reported the unlawful harassment of her co-workers to Benjamin Harris in

September 2008, Katie Broadhurst in August 2013, Ross Flores in December 2013, Jessica Edwards in February 2014 and Ruey Newsom in February 2014.

395.   CACI did not investigate Funicello's complaints.

396.   CACI took an adverse action against Funicello when it terminated her on February 4, 2014.

397.   CACI had no legitimate business reasons for the adverse action it took against Funicello.

398.   CACI's stated reasons for its adverse action against Funicello are pretext for retaliation for Funicello's September 2008, August 2013, and December 2013 complaints of discrimination.

399.   These adverse actions occurred under circumstances that raise a reasonable inference of unlawful discrimination based on Funicello's race, national origin, age, and gender, as CACI treated Funicello less favorably than her male, Caucasian, and/or younger coworkers who have not complained of race and gender discrimination or retaliation.

400.   When CACI terminated her, Funicello was in the process of watermarking 300,000 total documents and about 200,000 files were left to do.

401.   It would have taken Funicello five to six months to complete this project.

402.   After terminating Funicello's employment, CACI hired three new employees as part of Funicello's program, FIRES.

403.   Funicello has sustained damages as a result of CACI's unlawful retaliation in violation of Title VII and the ADEA, including, but not limited to, lost wages, lost opportunity to increase her wages, lost bonuses, lost opportunity to increase her bonuses, damage to her career, and emotional, mental, and physical distress and anxiety.

404.    Funicello is entitled to such legal or equitable relief as will effectuate the purposes of Title VII, including but not limited to economic and compensatory damages, and reasonable costs and attorneys' fees.

## PRAYER FOR RELIEF

Plaintiff Lorena L. Funicello prays this Honorable Court for judgment against Defendant and respectfully demands economic damages, liquidated damages, compensatory damages, punitive damages, reasonable attorney's fees, pre-judgment interest, court costs, and any other relief that this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff Lorena L. Funicello demands a trial by jury and any and all issues proper to so be tried.

Plaintiff Lorena L. Funicello
*By Counsel*

/s/ R. Scott Oswald
R. Scott Oswald
VSB # 41770
The Employment Law Group, P.C.
888 17th Street, NW, 9th floor
Washington, D.C. 20006
(202) 261-2883
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
*Counsel for the Plaintiff Lorena L. Funicello*